# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| ARISTA MUSIC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-0827 |
| ) | Chief Judge Campbell |
| TIME WARNER, INC., et al., ) | Magistrate Judge Knowles |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER TO CENTRAL DISTRICT OF CALIFORNIA (28 U.S.C. § 1404(a))

Defendants Time Warner, Inc.; Warner Bros. Entertainment Inc.; Warner Bros Television Distribution Inc.; Telepictures Productions Inc.; and WAD Productions Inc.[1] ("Defendants"), through their counsel, hereby file this Memorandum and Declarations of Jonathan Norman and Michael Schenk in Support of their Motion to Transfer to the Central District of **California**. This Memorandum sets forth the grounds upon which the Defendants seek the transfer under 28 U.S.C. § 1404(a). For the convenience of the parties, witnesses and the courts, this action should be transferred to the Central District of **California**, where each of the Plaintiffs and Defendants does business and where any significant events occurred.

## INTRODUCTION

Nashville may be "Music City," but this lawsuit is not about Nashville's music. This case should be in the Central District of California.

The Plaintiffs (collectively the "Labels") complain that Defendants used their recordings in the *The Ellen DeGeneres Show* (the "Show"). The Show is a daily, one-hour, daytime talk

---

[1] Two other purported defendants appear in the Plaintiffs' caption, but they are not separate legal entities. Warner Bros Domestic Television is merely a division of Warner Bros. Television Distribution Inc. and A Very Good Production is merely a tradename of Crazy Monkey, Inc.

{00430465.2}

show produced by defendant WAD Productions Inc. ("WAD") in Burbank, **California**, is currently taped in a studio on the Warner Bros. lot in Burbank, **California** and distributed by defendant Warner Bros. Domestic Television Distribution ("WBDTD") [2] from Burbank, **California**. The Show is syndicated to more than two hundred television stations across the country, only one of which is in Nashville.

The Show is built around the immense appeal of its star, Ellen DeGeneres, and her engaging, witty and easy-going comedic style. Ms. DeGeneres won the Daytime Emmy for Outstanding Talk Show Host every year from 2005 through 2008. The Show has been for many years among the most popular daytime TV programs of any kind.

Ms. DeGeneres opens each episode with a comedy monologue, followed by the popular "dance over" segment (in which Ms. DeGeneres dances from the stage to the interview area), and then interviews celebrity guests, plays audience participation games, introduces segments that spotlight human interest stories and frequently has musical guests who play their music live in the Show's studio in Burbank, **California**. Instead of using a "house band" that is a staple of many talk shows, the Show employs a disc jockey in Burbank, **California** who plays short clips of recorded music four or five times during each episode.

The central issue in this case is whether the Labels can recover damages for the Show's use of their sound recordings. On that issue, the interactions between the Labels and the Show are decisive. Those interactions overwhelmingly occurred in the Central District of **California** and have nothing to do with Nashville. Only three of the nineteen Labels even claim to have offices in Nashville or Tennessee and those offices had infrequent, if any, involvement with the Show.

---

[2] WBDTD is a division of Warner Bros. Television Distribution Inc., which is owned by Burbank Television Enterprises LLC, which is owned by Warner Bros. Entertainment Inc.

{00430465.2}

If the Labels are able to cure the pleading defects in their First Amended Complaint, (as set forth in Defendants' concurrently filed Motion for More Definite Statement under Rule 12(e)), Defendants will demonstrate in defense of the claims that since the Show's inception in 2003, the Labels clearly were aware the Show was playing their recordings and that they were not being paid for licenses for the use of their recordings on the Show. The Show is widely viewed in the United States, with an average of three million viewers, each day. Executives and other employees at the Labels have regularly attended tapings of the Show in Burbank, **California**. The Labels' artists made hundreds of live appearances on the Show -- almost entirely in **California** and never in Tennessee -- and those appearances were coordinated by and heavily promoted by the Labels' publicity departments, most of which are located in **California** with the rest generally located in New York. And each of the Labels has a publishing arm -- again located in **California** or New York -- that was paid by the Show for hundreds of synchronization ("sync") licenses.[3] Yet, from the Show's first broadcast in September 2003 through the issuance of a cease and desist demand in February 2009, a period of more than five years, the Labels never attempted to stop the Show from using their music.

To the contrary, the Labels actively encouraged the Show to use their music so the Labels and their artists could profit from the Show's immense popularity. Each of the Labels repeatedly provided the Show in **California** with advance copies of new CDs for the purpose of allowing the Show to play these recordings. The Labels arranged for their artists to appear on the Show in **California** with the understanding that the artists' recorded music would be played during the Show. The Labels expected the Show to use their recorded music in these and other instances, with full knowledge that the Show had not paid for master-use licenses.

---

[3] Sync licenses cover the underlying musical composition, as opposed to master use licenses, which cover the recordings.

{00430465.2}

For the convenience of the parties, witnesses and the courts, this action should be transferred to the Central District of **California**, where each of the Plaintiffs and Defendants does business and where the significant events took place.

### I. FACTS PERTINENT TO THE MOTION

#### A. The Show's Witnesses and Documents Are Located in the Central District of California.

The Show is produced by WAD Productions Inc. (First Amended Complaint ¶ 35). The Show's offices from 2003 to August 2008 were located at the NBC Studios in Burbank, California. In August 2008, the offices were relocated to the Warner Bros. lot in Burbank, California. (Declaration of Jonathan Norman ("Norman Decl.") ¶ 2). Since the Show's inception in 2003, each of the employees of the Show worked out of those Burbank offices. (*Id.*) Jonathan Norman is one of the Show's producers and is primarily responsible for the music used on the Show. Mr. Norman works closely with his assistants (currently Wendy Zeder; formerly Robyn Hawkes; Terri Tillman; Brianna Cartwright and Laura Bertalan) and the Show's DJs (currently Tony Okungbowa; formerly Johnny Abraham and Ted Stryker). Each of these individuals performed his work in Burbank, California and resides in the Los Angeles area, with the possible exception of two of Mr. Norman's former assistants. (Norman Decl. ¶¶ 1, 4).

The business records relating to the Show, including any documents related to use of the Labels' music are located in the Show's Burbank, California offices or the offices of the Show's licensing agent, Evan Greenspan, in Studio City, California. (Norman Decl. ¶ 3). Indeed, the only discovery served to date in this action is directed to California corporations -- defendant Crazy Monkey, Inc. and third party Evan Greenspan, Inc. dba EMG Music Clearance. Declaration of Michael Schenk ("Schenk Decl.") ¶ 3.

Except for the rare times when the Show was "on location," the Show was taped in a studio on the NBC Studio lot in Burbank, California or on the Warner Bros. lot in Burbank, California. Any recorded music used on the Show is either played during the taping or added during post-production at WAD's offices in Burbank, California. (Norman Decl. ¶¶ 2, 6).

The Show is distributed by WBDTD, (First Amended Complaint ¶32), whose offices are located in Burbank, California. (Norman Decl. ¶ 13) As shown on the Show website, referenced at paragraph 43 of the First Amended Complaint, the Show is broadcast by 220 stations in 49 states, including three stations in the Central District of California.

### B. The Labels' Executives And Employees Involved With The Show's Music Are Overwhelmingly Located In California.

The various Labels are actually related to one of four groups:

- Capitol Records, Priority Records and Virgin Records America are part of **EMI.**
- Arista, Laface and Zomba are part of **Sony.**
- Interscope is part of **UMG.**
- Atlantic, Big Beat, Elektra, Rhino, Sire and Warner Bros. Records are part of **WMG.**

UMG and WMG are headquartered in the Central District of California. Sony and EMI are based in New York with substantial offices in the Central District of California. (Norman Decl. ¶ 11).

Mr. Norman, his assistants and the DJs had extensive contacts with the Labels' Los Angeles area executives and employees, often on a daily basis, concerning a wide range of topics related to the Show's use of the Labels' music. The Labels' employees arranged for the appearance of the Labels' artists on the Show, often to perform their music live. The artists' appearances were often accompanied by the artists' recordings, either to accompany their walking on the stage or as background for live performances. The artists' appearances were

promoted by the Show and the Labels, frequently with the use of the artists' recorded music. Many of the Labels' executives and employees attended tapings of the Show in Burbank, California. (Norman Decl. ¶ 7).

The Labels' employees urged that the Show use particular recordings on the Show, often for use in Ms. DeGeneres' dance over. The Labels' employees sent Mr. Norman and the Show's DJs copies of the artists' CDs and provided them with access to the Labels' secure websites that had advanced copies of the artists' music. The Labels' employees frequently reported to Mr. Norman that the use of their artists and their music on the Show contributed significantly to increased sales of the Labels' recordings. In recognition of the Show's contribution, the Labels have presented the Show with several gold records. (Norman Decl. ¶¶ 8, 10).

The Labels' employees and executives were overwhelmingly located in the Los Angeles area with the others generally located in New York, and very few located in Tennessee. A number of the Labels' employees who had contact with the Show have since left the Labels, but are still living and working in the Los Angeles area, including Gihan Salem, Jim Merlis, and Ambrosia Healy. (Norman Decl. ¶¶ 11, 12).

## II. ARGUMENT

Following this Court's framework for analyzing transfer of venue to a more convenient forum -- *In re Aredia & Zometa Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 17906 (M.D. Tenn. Mar. 6, 2008) (*Aredia & Zometa Litigation*) -- this action should be transferred to the Central District of California. A court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties. *Aredia & Zometa Litigation,* 2008 U.S. Dist. LEXIS at *8-9; *Kay v. National City Mortgage Co.,* 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007)*;* 28 U.S.C. § 1404(a)("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). The factors this Court identified in the *Aredia and Zometa Litigation* clearly point to transfer here:

- The Labels' choice to sue in the this district smacks of forum shopping; there is no connection between this action and this district and the Labels are generally not resident in this district;

- The proof and witnesses overwhelmingly are found in the Central District of California and not this district;

- The claims arose, if at all, in the Central District of California where the Show is produced, taped and distributed;

- Local interest in this action will be greatest in the Central District of California where the Labels are headquartered or have significant offices and where defendant WAD -- which produces the Show -- and WBDTD -- which distributes the Show -- are located; and

- Tennessee law is unlikely to be applied in this case, because (1) federal copyright law preempts any state law claims and (2) Tennessee's choice of law dictates that California law be applied to the claims.

None of the factors relevant to this motion weighs in favor of keeping this action in Nashville.

### A. This Action Could Have Been Brought In The Central District Of California.

The threshold consideration under 28 U.S.C. § 1404(a) is whether the action might have been brought in the transferee court. *Aredia & Zometa Litigation,* 2008 U.S. Dist. LEXIS at *8 (attached). This action might have been brought in the Central District of California. 28 U.S.C. section 1400 provides that venue is proper in a copyright action "in the district in which the defendant . . . resides ..." Each of the Defendants here is a corporation and pursuant to 28 U.S.C. section 1391(c), is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Each of the Defendants does business in the Central District of California, including according to Plaintiffs, by their involvement in the Show. (First Amended Complaint ¶¶ 30-37).

### B. Transfer Is Justified By The Convenience Of The Parties And Witnesses.

**1. Plaintiffs' choice of forum is not entitled to deference because Plaintiffs do not reside in Nashville, which has little or no connection to this action**.

Although the plaintiff's choice of forum is normally given "substantial weight," this weight is diminished where the forum is not the plaintiff's residence, or where the action has a limited connection to the forum. *Aredia & Zometa Litigation,* 2008 U.S. Dist. Lexis at *10 and n.1 ("The plaintiff's interest diminishes where the plaintiff chooses a foreign forum rather than his or her home forum. ... The plaintiff's interest decreases even further where the central facts of a lawsuit occur outside the chosen forum")(citations omitted); *Kay v. National City Mortgage*

*Co.,* 494 F. Supp. 2d at 850. Both of those factors suggest that Plaintiffs' choice of forum here is not entitled to any deference.

Only three of the nineteen Plaintiffs claim to have offices in this district. (First Amended Complaint ¶¶9-27 -- only Capitol Records LLC, UMG Recordings, Inc. and the recently added EMI Christian Music Group, Inc. claim to have offices in Nashville or Tennessee). A search of the public records of the Tennessee Department of State Business Information database reveals that only eight of the nineteen Labels are even registered to do business in Tennessee and only one (the recently added EMI Christian Music Group) has its principal address in Tennessee. The other seven Labels licensed to do business in Tennessee are headquartered in other states, including two in California. (Schenk Decl. ¶ 2; Exh. 1).[4]

Even more tenuous is the connection between this action and this District. The Show is produced in California and any decisions about the sound recordings used on the Show were made in California. At most, only a tiny fraction of the recordings at issue here are from Nashville artists (who are not plaintiffs or witnesses in any event), as reflected on Exhibits A and B to the First Amended Complaint. *(See also* Norman Decl. ¶ 9.)

While the Labels allege that they "suffered harm in this District" (First Amended Complaint ¶ 8), that harm is not identified. With the possible exception of EMI Christian Music Group, the Labels are foreign corporations or partnerships (First Amended Complaint ¶¶9-27), owned by four music groups which are headquartered in California and New York. (Norman Decl. ¶ 11).

---

[4] Pursuant to Federal Rule of Evidence 201, this Court should take judicial notice of public records regarding a corporation or other publicly licensed entity. *See, e.g, Reiner v. Washington Plate Glass Co.,* 711 F.2d 414, 416 (D.C. Cir. 1983)(taking judicial notice of District of Columbia Recorder of Deeds office public records regarding a corporation).

{00430465.2}

Finally, the Labels identify a single television station in this District that broadcasts the Show, failing to mention that the website they reference identifies 219 other stations in 49 states that also broadcast the Show. (First Amended Complaint ¶8).

In short, the Labels' choice to sue in this District smacks of forum shopping.

**2.  Access to proof and witnesses weighs in favor of transfer to California.**

Access to witnesses is of "utmost importance" in deciding whether to transfer venue. *Aredia & Zometa Litigation,* 2008 U.S. Dist. LEXIS at *11; *Kay,* 494 F. Supp. 2d at 852. In this case, the vast majority of important witnesses are in the Central District of California and there are no important witnesses here in the Middle District of Tennessee.

Based upon the First Amended Complaint and Defendants' anticipated defenses to the Labels' claims (if they are ultimately properly pled), the critical issues are:

(1)  Whether the Labels own the recordings they claim (First Amended Complaint ¶¶ 41, 46);

(2)  Whether the Labels timely registered copyrights for those recordings (First Amended Complaint ¶ 47);

(3)  Whether WAD used those recordings on the Show (First Amended Complaint ¶¶ 48-50, 53);

(4)  Whether WAD had permission to use those recordings, including whether the Labels had impliedly licensed WAD to use the recordings on the Show (First Amended Complaint ¶¶ 48, 53);

(5)  Whether any unlicensed use was willful (First Amended Complaint ¶ 51);

(6)  When the Labels knew or reasonably should have known that their recordings were being used on the Show;

(7) Whether the Labels unreasonably delayed in bringing their claims and whether that delay was prejudicial to WAD; and

(8) Whether the Labels suffered damages (First Amended Complaint ¶¶ 51, 55).

As set forth in the Norman Declaration, WAD's documents and almost all of its witnesses will be in the Central District of California. (Norman Decl. ¶¶ 2-5). While many of those witnesses are current employees of one of the Defendants, there are several former employees whose testimony is likely to be important and who could not be compelled to appear at trial in Nashville.

WAD also expects to rely upon current and former employees of the Labels for evidence bearing on the issues in this case. In particular, the course of dealings between the parties establishes that the Labels encouraged WAD to use their recordings on the Show, that the Labels provided WAD with those recordings, and that the Labels believed that the Show played an important role in promoting the sale of their recordings. The current and former employees of the Labels with knowledge of these facts are largely in the Central District of California or in New York City. (Norman Decl. ¶¶ 11, 12).

The former employees of the parties cannot be compelled to appear at a trial in Nashville. *See* F.R.C.P. 45(b)(2). Their testimony could be presented to a jury only by videotape. As this Court has held, "trial by videotape is simply not preferable to live examination in front of a jury." *Aredia & Zometa Litigation,* 2008 U.S. Dist. LEXIS 17906 at *12-13. But even for willing witnesses, the inconvenience imposed by requiring them to travel from their home states to the Middle District of Tennessee weighs in favor of transferring the cases. *Id.*; *Kay,* 494 F. Supp. 2d at 852.

### 3. The claims arose, if at all, in the Central District of California.

The Labels' claims arise, if at all, from the use of their recordings on the Show. The Show is produced in Burbank, California. The Show is taped in and distributed from Burbank, California. (Norman Decl. ¶¶ 2, 14).

The only aspect of the Show that takes place in this district is the broadcast of the Show. (First Amended Complaint ¶ 8). But the local broadcast is by WTVF, not one of the Defendants in this case. As previously mentioned, WTVF is one of over two hundred stations that broadcast the Show every day.

### 4. Docket congestion does not favor either venue.

Both the Central District of California and this District have congested dockets. There is no reason to believe that there is less congestion on this Court's docket compared to the docket of the judge who would be appointed in the Central District of California.

### 5. Local interest favors the Central District of California.

This case is of particular interest in the Central District of California, which is the headquarters or a major office of each of the Plaintiffs and is where the Show is produced, taped and distributed.

While Nashville may be home to many recording greats, the Show tends towards musical guests who live in the Los Angeles area. Indeed, very few of the Show's musical guests were from Nashville. The Show's use of recorded music followed similar lines, as reflected on Exhibits A and B to the First Amended Complaint. (*See also* Norman Decl. ¶ 9).

The fact that the Show is broadcast on a single station in Nashville gives this District no unique interest. As mentioned, the Show is broadcast on over 200 television stations in 49 states and virtually every federal district.

**6.  Familiarity with state law is irrelevant or favors the Central District of California.**

It is highly unlikely that Tennessee law governs any claim in this case.  Count I of the First Amended Complaint is alleged under federal law.  Although Count II purports to allege a claim under Tennessee law, under choice of law principles, California law rather than Tennessee law will likely be applied to the Labels' state law claims, if any.  *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992) establishes the framework for choice of law questions under Tennessee law.  The court first must determine if there is a conflict in the laws of the competing states.  If the applicable laws of both states are basically the same, then there is no conflict and a district court in Tennessee or California would be equally qualified to handle the case.

If there is a conflict, then these contacts are considered under *Hataway*, 830 S.W.2d at 56-60:

- "the place where the injury occurred" directs us to the principal place of business of each of the Labels.  Once again, only eight of the labels are even licensed to do business in Tennessee and each of them (except the sole recently added EMI Christian Music Group) claims California or New York as their principal place of business. (Schenk Decl. ¶2; Exh. 1).

- "the place where the conduct causing the injury occurred" points toward California because all of Defendants' alleged acts took place there: the Show is produced there, taped there and distributed from there. (Norman Decl. ¶¶2, 6, 13).

- "the domicile, residence, nationality, place of incorporation and place of business of the parties" points away from Tennessee and towards California.  With the exception of one, none of the nineteen Labels is incorporated in Tennessee or maintains its principle place of business in Tennessee.  Indeed, only three of the Labels even claim an office in this state.  In

contrast, several of the Labels are California partnerships or corporations (First Amended Complaint ¶¶ 17, 19, 25), two of the four groups of Labels are headquartered in the California and the other two groups have substantial offices in that District. (Norman Decl. ¶11).

- "the place where the relationship, if any, between the parties is centered" must be California. As detailed in the Norman Declaration, there is nearly daily contact between the WAD offices in California, and the offices of the Labels in California. There is virtually no contact with Tennessee. (Norman Decl. ¶¶ 7, 9, 11, 12)

Thus, as between Tennessee and California, the factors clearly favor California law.

Because it is unlikely that Tennessee law will apply to any claim in this case, this District has no advantage over the Central District of California in resolving the case. And if California law applies, this becomes another factor weighing in favor of transfer.

### III. CONCLUSION

Weighing these factors, this Court should find that the Central District of California is a more convenient venue for this action. None of the factors clearly point to this District and many of them, including the location of proof and witnesses, points to the Central District of California as a more convenient venue.

DATED: November 25, 2009

{00430465.2}

Respectfully submitted,

*/s/ Aton Arbisser*
Aton Arbisser
*Admitted Pro Hac Vice*
Kaye Scholer LLP
1999 Ave. of the Stars, Suite 1700
Los Angeles, CA 90067
aarbisser@kayescholer.com
Phone: (310) 788-1000
Fax: (310) 788-1200

*/s/ Stephen J. Zralek*
Stephen J. Zralek (BPR: 018971)
Bone McAllester Norton PLLC
511 Union St. Ste 1600
Nashville, TN 37219
Phone: (615) 238-6300
Fax: (615) 238-6301

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document via ECF on November 25, 2009, on:

Timothy L. Warnock, Esq.
Tim Harvey, Esq.
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
*Counsel for Plaintiffs*

*/s/ Stephen J. Zralek*