IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **ARISTA MUSIC, et al.,** | ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 3:09-cv-0827 Chief Judge Campbell |
| **TIME WARNER, INC., et al.,** | ) ) ) | Magistrate Judge Knowles |
| Defendants. | ) | |

**DEFENDANT CRAZY MONKEY, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FED. R. CIV. P. 12(b)(2)), OR IN THE ALTERNATIVE, TO DISMISS BASED ON IMPROPER VENUE (FED. R. CIV. P. 12(b)(3); 28 U.S.C. §1406(a))**

Defendant Crazy Monkey, Inc. ("Crazy Monkey"), through its counsel, hereby files this Memorandum and the Declarations of Harley Neuman and David Decker in Support of its Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, for Dismissal Based on Improper Venue. This Memorandum sets forth the grounds upon which Crazy Monkey seeks dismissal of this lawsuit against it for lack of "minimum contacts" with Tennessee. Further, this Memorandum sets forth the grounds upon which the Court should dismiss based on improper venue in this judicial district.

## I. INTRODUCTION

Plaintiffs allege that Defendants other than Crazy Monkey infringed Plaintiffs' copyrights in sound recordings owned or controlled by Plaintiffs by using those recordings on *The Ellen DeGeneres Show* (the "Show"). In their First Amended Complaint ("FAC"), Plaintiffs for the first time added Crazy Monkey as a Defendant, alleging only on information and belief that Crazy Monkey "produces and/or distributes the Show and/or has the right to control and authorize such activities." FAC ¶ 37. In fact, WAD Productions Inc. ("WAD") produces the Show and Warner Bros. Domestic Television Distribution distributes the Show in the United

{00430548.1}

States. Crazy Monkey, a California corporation, only provides Ellen DeGeneres' services to the Show as its host and one of its executive producers. Crazy Monkey does not produce or distribute the Show and has no right to control or authorize its distribution in Tennessee or anywhere else. Crazy Monkey does no business in Tennessee. Thus, under firmly established Sixth Circuit law, Crazy Monkey lacks sufficient minimum contacts with Tennessee, and this Court has no personal jurisdiction over Crazy Monkey. Crazy Monkey, therefore, should be dismissed from this action. In the alternative, Crazy Monkey should be dismissed from this action because venue is improper in this judicial district.

## II. STATEMENT OF FACTS

It is undisputed that Crazy Monkey is a California corporation and that Ellen DeGeneres is its President. FAC ¶ 37; Declaration of Harley Neuman ¶ 3 ("Neuman Decl.").[1] All of Ms. DeGeneres' business activities are conducted through Crazy Monkey, which is Ms. DeGeneres' loan out company, and which has its office and sole employee in the Los Angeles, California area. Neuman Decl. ¶¶ 2-3. Crazy Monkey maintains no office and has no employees in Tennessee. *Id.* ¶ 3. Crazy Monkey has never been licensed to do business in Tennessee. Nor does Crazy Monkey distribute or sell any products in Tennessee. *Id.*

Pursuant to an April 1, 2002 written agreement ("Services Agreement") with Telepictures Productions ("Telepictures"), Crazy Monkey provides Telepictures with Ms. DeGeneres' artistic

---

[1] Such a declaration is proper to support a motion to dismiss for lack of personal jurisdiction and the Court cannot assume the truth of allegations in the FAC that are controverted by the evidence presented in a declaration. "In the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

{00430548.1}

services, such as rehearsals, publicity-related and promotional activities, and the filming or taping of the Show.[2] *Id. ¶4.*

Telepictures has an agreement with WAD to produce the Show. Declaration of David Decker ("Decker Decl.") ¶ 5. The pre-production work on the Show takes place at the Show's offices in Burbank, California, and the Show is taped before a live audience in Burbank, California, formerly at the NBC lot, and since 2008, at the Warner Bros. lot. Decker Decl. ¶ 8; Neuman Decl. ¶ 6. While the Show sometimes is taped "on location," Ms. DeGeneres has never visited Tennessee in connection with production of the Show. Neuman Decl. ¶ 6.

Furthermore, Crazy Monkey does not distribute the Show. While the Services Agreement gave Ms. DeGeneres the right to approve and consult with respect to certain staff and artistic elements, she has no authority or control over the Show's distribution. Indeed, she waived her right, if any, to withdraw from distribution her artistic work on the Show. Neuman Decl. ¶ 7; Decker Decl.¶ 3.

Crazy Monkey granted Telepictures the right to "sell, distribute, use, produce, license, transmit, broadcast, publish and otherwise exploit [the Show], or any episode(s) thereof, throughout the universe …". Decker Decl. ¶ 4. However, the Services Agreement expressly provides that "[n]othing shall be deemed to obligate Telepictures to distribute, exhibit or otherwise exploit [the Show]. Telepictures may do so or refrain therefrom as it may decide in its own absolute discretion …". The Services Agreement also provides that "[Telepictures] shall

---

[2] In addition to providing Telepictures with Ms. DeGeneres' services on the Show, Crazy Monkey also provided others with Ms. DeGeneres' artistic services for certain television appearances, including as a host for awards shows and comedy specials, none of which has been filmed or taped in Tennessee; an American Express card commercial; and in connection with the publication of two books by Ms. DeGeneres. Neither the commercial nor the books has any particular nexus to Tennessee. Neuman Decl. ¶ 5.

have the right, but not the obligation, to exploit or distribute any one or more Series episodes in any media now or hereafter known throughout the Universe in perpetuity." Decker Decl.¶ 4.[3]

Telepictures has an agreement with Warner Bros. Domestic Television Distribution ("WBDTD") to produce the Show, among other productions. *Id.* ¶ 6. Thus, WBDTD -- not Crazy Monkey -- distributes the Show in the United States, including any distribution in Tennessee. FAC ¶ 32; Decker Decl. ¶ 6. WBDTD is a division of Warner Bros. Television Distribution Inc., has its own offices and employees, and controls its own day-to-day activities. Decker Decl. ¶ 6.

### III. LEGAL STANDARD FOR MOTION TO DISMISS

Plaintiffs, the parties asserting jurisdiction, have the burden to prove such jurisdiction exists. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). If Plaintiffs fail to establish a *prima facie* case through the uncontroverted allegations of their First Amended Complaint and evidence submitted in opposition to the motion, the Court may grant the motion on the basis of declarations alone. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If Plaintiffs dispute Crazy Monkey's declarations, the court must hold an evidentiary hearing at which Plaintiffs must establish the jurisdictional facts by a preponderance of the evidence. *Id.; Youn v. Track, Inc.*, 324 F.3d 409, 416 (6th Cir. 2003).[4]

Where, as here, a federal court's subject matter jurisdiction derives from the existence of a federal question, personal jurisdiction exists only if Crazy Monkey is subject to service of process under Tennessee's long-arm statute, and if the exercise of personal jurisdiction would

---

[3] A redacted copy of the Services Agreement will be provided under the parties' Agreed Protective Order, once it has been approved by the Court.

[4] If Plaintiffs submit evidence that purports to controvert the Decker or Neuman Decls., Crazy Monkey requests that an evidentiary hearing be conducted to resolve any jurisdictional facts needed to decide this motion.

{00430548.1}

not deny Crazy Monkey constitutional due process. *Bridgeport Music, Inc. v. Still N The Water Publishing,* 327 F.3d 472, 477 (6th Cir. 2003) (citing *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). Because Tennessee's long-arm statute extends to the limit of the due process clause,[5] the two inquiries are merged and this Court thus must determine whether the exercise of personal jurisdiction over Crazy Monkey violates constitutional due process. *Bridgeport Music, Inc.,* 327 F.3d at 477. Thus, a single analysis is necessary: whether Crazy Monkey has sufficient minimum contacts with Tennessee "such that the maintenance of the suit does not offend the traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003).

Personal jurisdiction may be either general or specific, depending on the extent of the defendant's contacts with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 & nn.8-9 (1984); *Bird*, 289 F.3d at 873. General jurisdiction subjects a defendant to suit in the forum on any matter, including matters wholly unrelated to the defendant's contacts with the forum, whereas specific jurisdiction subjects a defendant only to suit on claims arising out of or relating to the defendant's contacts with the forum. *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 213, 218 (6th Cir. 2006); *Youn v. Track, Inc.* 324 F. 3d 409, 417-18 (6th Cir. 2003).

### IV. LEGAL ARGUMENT

**A.  General Jurisdiction Does Not Exist Over Crazy Monkey.**

General jurisdiction is proper only where a defendant's contacts with the forum state are substantial, continuous and systematic. *Helicopteros*, 466 U.S. at 414-15. In *Helicopteros*, the

---

[5] Under Tennessee's long-arm statute, jurisdiction may be asserted on "any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20-2-214(a)(6).

{00430548.1}

United States Supreme Court found that the forum State of Texas lacked general jurisdiction over a defendant corporation that did not have a place of business within the State, had never been licensed to do business there, and whose contacts were limited to a single visit to Texas by the company's chief executive officer, acceptance of checks drawn on a Texas bank, the purchase of equipment from businesses operating within Texas, and the presence of the defendant's employees within Texas for training. *Id.* at 416, 418-19. Similarly, the Sixth Circuit has held there was no general jurisdiction over a defendant that did not maintain an office in the forum State, did not direct its business operation from the forum State, and was not licensed to do business there. *See Bird*, 289 F.3d at 873.

As the Neuman Declaration establishes, Crazy Monkey does not have any substantial or "continuous and systematic" contacts with Tennessee. Crazy Monkey maintains no offices in Tennessee, has no employees in Tennessee, is not licensed to do business in Tennessee, and does not manufacture, distribute or sell any products in Tennessee. Neuman Decl. ¶ 3. Neither the provision of artistic services to the Show, (the distribution of which Crazy Monkey does not authorize or control) or for other television appearances not based in Tennessee, nor Crazy Monkey's production of an American Express commercial or two book publications, is sufficient to confer general jurisdiction over Crazy Monkey.

**B.  Specific Jurisdiction Does Not Exist Over Crazy Monkey.**

The Sixth Circuit has established a three-part test to determine whether the exercise of specific jurisdiction is consistent with the principles of due process. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequence caused by the defendant must have a substantial

enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

While a motion to dismiss for lack of specific personal jurisdiction may be granted based upon the failure to establish prong two or three of the *Mohasco* test, "it is often repeated that purposeful availment is the "sine qua non" of personal jurisdiction." *Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007) (citations omitted). Here, Plaintiffs plainly cannot meet their burden to show that Crazy Monkey purposefully availed itself of doing business in Tennessee, and thus the Court need not reach the second and third prongs of the *Mohasco* test.

As set forth in greater detail below, Crazy Monkey has not made any deliberate efforts to direct its activities toward Tennessee, and thus has not purposely availed itself of the privilege of acting in the state. Crazy Monkey provides artistic services to the Show, but has no authority or control over the Show's distribution – let alone its distribution or broadcast in Tennessee. Accordingly, Sixth Circuit law precludes the exercise of specific personal jurisdiction over Crazy Monkey. *See Bridgeport Music, Inc. v. Still N the Water Publ'g,* 327 F.3d 472, 478 (6th Cir. 2003); *Smith v. Home Depot USA, Inc.,* 294 Fed. Appx. 186, 190 (6th Cir. 2008); *Palnik v. Westlake Entertainment, Inc.,* 2009 U.S. App. LEXIS 19417 (6th Cir. 2009) (unpublished)[6].

**1.  Crazy Monkey did not purposefully avail itself of the privilege of conducting any activities in Tennessee.**

For specific jurisdiction over a defendant to exist, the defendant must "purposefully avail" itself of the "privilege of conducting activities within the forum state, thus invoking the

---

[6] A copy of all unpublished decisions are attached hereto.

{00430548.1}

benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citation and quotation omitted). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.*

Purposeful availment is "something akin to a deliberate undertaking" -- a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Bridgeport Music, Inc.* 327 F.3d at 478 (internal quotation omitted). Purposeful availment thus exists "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that 'he should reasonably anticipate being haled into court there.'" *Id.* (citation omitted).

Here, Crazy Monkey has no contact with Tennessee and *itself* has taken no deliberate action to create any connection with Tennessee. The Services Agreement provides Crazy Monkey with no right to distribute the Show or to control its distribution. Furthermore, Telepictures, the party to whom Crazy Monkey loans Ms. DeGeneres' services pursuant to its Services Agreement, does not *itself* distribute the Show. Decker Decl. ¶ 6. Crazy Monkey has *no* contractual relationship with WBDTD, the distributor of the Show. *Id.* ¶ 7. Under these circumstances, this Court has no jurisdiction over Crazy Monkey.

### 2. Crazy Monkey does not control the distribution of the Show.

In a similar context in which allegedly infringing material was distributed in Tennessee, the Sixth Circuit found no personal jurisdiction over a non-resident defendant where, as here, the defendant was merely aware that its product *may* be distributed throughout the United States. *Bridgeport Music, Inc.* 327 F.3d at 478. In *Bridgeport Music v. Still N the Water Publ'g*,

{00430548.1}

Plaintiffs were music publishers and distributors. Defendants were a competing non-resident music publisher and recordings distributor. Plaintiffs alleged defendants infringed their copyrights by sampling from plaintiffs' copyrighted songs and compositions, and then making recordings and distributing those recordings. The district court granted the defendants' motion to dismiss for lack of specific personal jurisdiction, finding that defendants had not purposefully availed themselves of the privilege of acting in Tennessee, the forum state. *Id.* at 478.

On appeal, plaintiffs argued that defendant music publisher had purposefully availed itself of the privilege of acting in Tennessee because it had issued mechanical licenses to certain entities that it knew *were likely* to distribute recordings throughout the United States, including in Tennessee. *Id.* at 480. In affirming dismissal of the music publisher and reversing dismissal of the music distributor, the Sixth Circuit specifically adopted Justice O'Connor's "stream of commerce plus" approach to purposeful availment articulated in *Asahi Metal Indus. Company, Ltd. v. Superior Ct.*, 480 U.S. 102 (1987) (plurality op.). In *Asahi*, the Supreme Court considered whether a foreign manufacturer purposefully avails itself of the privilege of acting in a forum state merely by placing a product into the stream of commerce. Justice O'Connor found that "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi,* 480 U.S. at 112.

The Sixth Circuit held that the defendant recordings distributor had purposefully availed itself of the Tennessee forum because it was *a party to a distribution agreement* providing for distribution in all fifty states. *Id.* at 484 (citing *Tobin v. Astra Pharm. Prods., Inc.,* 993 F.2d 528 (6th Cir. 1993)).[7] The Court reached the opposite conclusion, however, regarding the defendant

---

[7] In *Tobin,* the Sixth Circuit held that a foreign defendant drug manufacturer had purposefully availed itself of the forum state because it "sought and obtained a distributor to market its product in each and every state*." Tobin,* 993 F. 2d at 544.

{00430548.1}

music publisher. Plaintiff submitted no evidence showing the defendant music publisher had such a distribution agreement, or was more than "merely aware that their distributor was likely to market the product in all fifty states." *Id.* at 480. Distinguishing *Tobin*, the Sixth Circuit concluded as to the defendant music publisher that such "mere awareness" was not sufficient to show purposeful availment. *Id.* at 480-81.

The Sixth Circuit recently reaffirmed this analysis and holding with respect to Tennessee's jurisdiction over a producer that -- like Crazy Monkey -- took no deliberate steps to distribute its product in Tennessee. *Smith v. Home Depot USA, Inc.,* 294 Fed. Appx. 186, 190 (6th Cir. 2008). In *Smith*, plaintiff, a customer injured by the use of a ladder, sued, among others, an Illinois-based subsidiary of a German company. The subsidiary manufactured ladders and sold them pursuant to a license agreement with its German parent company, which designed the ladders. Plaintiff alleged the Illinois manufacturer satisfied the purposeful availment requirement because, among other things, "it formed a nationwide licensing and distribution agreement for the sale of its products in 'North and South America' with the knowledge that its products would likely be marketed and sold in the United States, including Tennessee." *Id.* at 190. On summary judgment, the district court granted the Illinois-based manufacturer's motion to dismiss based on lack of specific personal jurisdiction. *Id.* at 188.

Home Depot, the retailer, appealed the district court's order. Citing *Bridgeport Music,* the Sixth Circuit affirmed:

> First, [the manufacturer] had no physical contact with the state of Tennessee. [The manufacturer] and [its German parent company] were in fact two separate companies. Although the licensing agreement gave [the German parent company] "the right to use the Trademarks in connection with the sale, marketing or promotion of Products within the Territory," which was defined as "North and South America," ... there was nothing in the Licensing Agreement that *required* [the German parent company] to market the ladders in Tennessee specifically. . . . The permission to sell its

{00430548.1}

> products in the wide expanse of North and South America is a far cry from a requirement to sell in Tennessee . . . .

*Id.* at 190 (emphasis in original).

The Sixth Circuit once again reiterated its holding earlier this year in *Palnik v. Westlake Entertainment, Inc.,* 2009 U.S. App. LEXIS 19417 (6th Cir. 2009), in which plaintiff musician alleged that defendant producers' movie used two of his copyrighted songs without his permission. *Id*. at *1. In that case, the producers were two California-based firms that moved to dismiss for lack of personal jurisdiction, arguing they did not do business in Ohio. *Id.* at *2. Addressing the due process requirement for exercising specific jurisdiction, the Court noted that:

> [T]he stumbling block for a plaintiff alleging jurisdiction on the basis of a product's availability in the forum state has ordinarily been that "minimum contacts" includes not just the placement of the product in the stream of commerce, but "[a]dditional conduct of the defendant [that] may indicate an intent or purpose to serve the market in the forum State . . . ." (citation omitted). Accordingly, our court has, like the Ohio courts, *focused on the distribution relationship* in determining whether a producer has sufficient connection to a forum state for jurisdiction to be consistent with the due process clause.

*Id.* at *4 (emphasis added) (citing *Bridgeport Music, Inc. v. Still N the Water Publishing*, 327 F. 3d 472 (6th Cir. 2003) (per curiam).

The Court thus found plaintiff's bare allegation -- like that of Plaintiffs here -- that the defendants participated in making the movie as "producers" *or* "distributors" was insufficient to demonstrate specific jurisdiction. Plaintiff did not demonstrate defendants were parties to an agreement that "required (as opposed to permitted or was silent as to) sale or rental in Ohio" and the court declined to infer the existence of such an agreement. *Id.* at *9 (noting that "a

production company does not necessarily own the distribution rights or control how distribution is accomplished.").[8]

Because Crazy Monkey has done nothing more than loan out the services of the host/executive producer of the Show, (which others placed "in the stream of commerce"), and itself does not participate in the distribution chain, specific personal jurisdiction cannot attach here, and the exercise of such jurisdiction would violate due process. Because Plaintiffs cannot demonstrate Crazy Monkey purposely availed itself of the Tennessee forum, the Court's inquiry is complete and personal jurisdiction cannot attach. *See Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

**C.   In the Alternative, this Case Should be Dismissed as to Crazy Monkey Because Venue is Improper in This Judicial District.**

28 U.S.C. section 1400 provides that venue is proper in a copyright action "in the district in which the defendant ... resides ...". Crazy Monkey is a corporation and, pursuant to 28 U.S.C. section 1391(c), is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Crazy Monkey, which has its offices and sole employee in Los Angeles and has no minimum contacts in Tennessee, clearly is not subject to personal jurisdiction in this judicial district, as set forth above. Therefore, this case should be dismissed as to Crazy Monkey based on improper venue. *See* Fed. Rule Civ. Proc. 12(b)(3); 28 U.S.C.§ 1406(a).

---

[8]   *See also Roll v. Dimension Films, L.L.C.*, 2006 U.S. Dist. LEXIS 4667, *10-11 (S.D. Ohio Jan. 23, 2006) (unpublished) (dismissing California movie producers from trademark infringement action where plaintiff "made no allegations, nor produced any evidence, that Defendants had any distribution agreement, let alone one that required nationwide distribution of the Movie.") (citing *Bridegport Music*, 327 F.3d at 480-81); *accord Davidson v. Time Warner, Inc.*, 1997 U.S. Dist. LEXIS 21559 at *8 (S.D. Tex. Mar. 31, 1997) (unpublished) (dismissing non-resident defendant artist for lack of personal jurisdiction, even though defendant artist "may have hoped" for national distribution, because plaintiff failed to link artist to product's distribution chain).

{00430548.1}

## V. CONCLUSION

For the reasons stated above, Crazy Monkey respectfully requests that the Court dismiss Crazy Monkey from this action with prejudice for lack of personal jurisdiction, or in the alternative, dismiss based on improper venue.

DATED: November 25, 2009

Respectfully submitted,

*/s/ Aton Arbisser*
Aton Arbisser
*Admitted Pro Hac Vice*
Kaye Scholer LLP
1999 Ave. of the Stars, Suite 1700
Los Angeles, CA 90067
aarbisser@kayescholer.com
Phone: (310) 788-1000
Fax: (310) 788-1200

*/s/ Stephen J. Zralek*
Stephen J. Zralek (BPR: 018971)
Bone McAllester Norton PLLC
511 Union St. Ste 1600
Nashville, TN 37219
Phone: (615) 238-6300
Fax: (615) 238-6301

Attorneys for Defendant Crazy Monkey, Inc.

## CERTIFICATE OF SERVICE

I certify that I served a copy of this document via ECF on November 25, 2009, on:

Timothy L. Warnock, Esq.
Tim Harvey, Esq.
Riley Warnock & Jacobson, PLC
1906 West End Avenue
Nashville, Tennessee 37203
*Counsel for Plaintiffs*

*/s/ Stephen J. Zralek*

{00430548.1}